**Brenda WOOTEN, Plaintiff,**

v.

**Leonard E. LOSHBOUGH, Jr., James E. Loshbough, Beth Loshbough, Jane Doe Loshbough, David Gawthrop, McGladrey, Hendrickson & Pullen, Defendants.**

**No. S86–276.**

United States District Court,
N.D. Indiana,
South Bend Division.

Nov. 26, 1986.

William E. Winingham, Indianapolis, Ind., Thomas H. Singer, South Bend, Ind., for plaintiff.

James Pankow, South Bend, Ind., for James E. Loshbough, Beth Loshbough and David Gawthrop.

Robert A. Van Vooren, Davenport, Iowa, E. Spencer Walton, Jr., South Bend, Ind., for McGladrey, Hendrickson & Pullen.

## MEMORANDUM AND ORDER

MILLER, District Judge.

This cause presents another of the seemingly endless series of questions of first impression under the civil enforcement provisions of the Racketeer Influenced and Corrupt Organizations Act ["RICO"], 18 U.S.C. §§ 1961 *et seq.:* under what circumstances, if any, may a judgment creditor whose judgment stems from a personal injury claim, maintain a RICO action? 18 U.S.C. § 1964(c) provides,

> Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee.

Brenda Wooten brings this RICO action against six defendants: Leonard E. Loshbough, Jr.; James E. Loshbough and his wife Beth; Jane Doe Loshbough; David Gawthrop; and the accounting firm of McGladrey, Hendrickson & Pullen [hereinafter "McGladrey"]. The cause is before the court on three matters: (1) motions to dismiss filed by McGladrey and joined by James and Beth Loshbough and Mr. Gawthrop; (2) Beth Loshbough's motion for a stay of discovery relating to her; and (3) McGladrey's motion for protective order against, and Ms. Wooten's corresponding motion to compel, production of certain documents.

### I.

McGladrey seeks dismissal of the complaint[1] on the ground that Ms. Wooten lacks standing to bring a civil RICO action; her injury, McGladrey argues, was not to

---

1. Neither McGladrey nor James and Beth Loshbough specify whether dismissal is sought under Fed.R.Civ.P. 12(b)(1) for lack of jurisdiction (that ground is argued in the Loshbough's memorandum) or under Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted. The court deems the issue one raised more appropriately under Rule 12(b)(6). See,

e.g., *Lopez v. Richards,* 594 F.Supp. 488 (D.Miss. 1984). Because no affidavits or other matters outside the pleadings were presented to the court in support of the motion, it matters not under which provision the motions are brought. Cf. *Malak v. Associated Physicians, Inc.,* 784 F.2d 277 (7th Cir.1986).

her business or property. Dismissal for failure to state a claim is proper only if it appears beyond doubt that the plaintiff will be unable to prove any set of facts that would entitle her to relief. *Jackam v. Hospital Corp. of America Mideast, Ltd.*, 800 F.2d 1577 (11th Cir.1986); *Ellsworth v. City of Racine*, 774 F.2d 182 (7th Cir.1985). The court must take the complaint's allegations as true, and view those allegations and the inferences reasonably to be drawn from them, in the light most favorable to the plaintiff. *Doe on behalf of Doe v. St. Joseph's Hospital*, 788 F.2d 411 (7th Cir. 1986); *Powe v. City of Chicago*, 664 F.2d 639 (7th Cir.1981). The court must not consider unsupported factual assertions found outside the pleadings. *Rodgers v. Lincoln Towing Service, Inc.*, 771 F.2d 194 (7th Cir.1985); *Ghouth v. Conticommodity Services, Inc.*, 642 F.Supp. 1325 (N.D.Ill. 1986).

Because the issue is a narrow one, the essential facts, as alleged in the complaint, can be briefly stated. Taking the pertinent allegations as true, the complaint alleges that the Loshboughs founded, operated and controlled the Federal Press Company. McGladrey performed accounting work for Federal Press and the Loshboughs. Mr. Gawthrop was an accountant with McGladrey from 1973 until 1980, when he became an officer of Federal Press. The defendants, Ms. Wooten alleges, acting individually and in concert, caused the funds and assets of Federal Press to be used for purposes other than the proper purposes of Federal Press, and filed false tax returns. As a result, the company lacked sufficient funds to purchase product liability insurance, establish a reserve fund, employ competent engineers or other technical assistance, or satisfy debts to persons injured by Federal Press products. Ms. Wooten alleges that the defendant conspired to engage in this pattern of racketeering activity "Be-

ginning in 1973, and continuing until the date of this Complaint". ·

On July 1, 1985, Ms. Wooten recovered a judgment of $850,000.00 on her products liability claim against Federal Press in the Marion Superior Court. Counsel inform the court that her judgment was based on the loss of fingers in a Federal Press machine in 1983, and that her judgment drove Federal Press into bankruptcy a few months after the judgment was rendered. Ms. Wooten brings this action under RICO [2], claiming that the defendants injured her ability to enforce her judgment.

### (A)

■ In support of its argument that Ms. Wooten's claim is one for personal injuries, and that she thus lacks standing to bring a civil RICO action, McGladrey relies principally upon *Moore v. Eli Lilly & Co.*, 626 F.Supp. 365 (D.Mass.1986), in which the district court refused to allow the plaintiffs to amend their products liability claim for personal injuries resulting from use of Oraflex. The plaintiffs had moved to add a RICO count, but the court concluded that such an amendment would be futile. The plaintiffs' case involved only personal injury; § 1964(c) creates no civil RICO remedy for personal injuries. ·

McGladrey also relies upon *Drake v. B.F. Goodrich Co.*, 782 F.2d 638 (6th Cir.1986), in which the district court had denied the plaintiffs' motion for leave to amend their wrongful death complaints to add civil RICO counts. The plaintiffs, who claimed their decedents had been exposed to toxic chemicals while working for the defendant, sought to add RICO counts to avoid dismissal due to Kentucky's statute of limitations on wrongful death actions. The Sixth Circuit agreed with the district court that RICO created no cause of action for per-

---

**2.** Ms. Wooten's complaint is in four counts. Count I alleges violation of § 1962(d), while Count II alleges violation of § 1962(a), (b) and (c). Since § 1964(c), which requires injury to business or property, applies to each count, the differences between the subsections of § 1962 are not material. No attack is made upon Counts III or IV, which allege pendent state claims, but those counts could not survive dismissal of the RICO counts; federal jurisdiction would be wanting. *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984).

sonal injuries. The *Drake* court, like the *Moore* court, cited Justice Marshall's statement that "the statute permits recovery only for injury to business or property. It, therefore, excludes recovery for personal injuries." *Sedima, S.P.R.L. v. Imrex Company, Inc.*, 473 U.S. 479, 105 S.Ct. 3275, 3297, 87 L.Ed.2d 346 (1985) (Marshall, J., dissenting).

Neither *Drake* nor *Moore*, however, involved a judgment creditor claiming injury to her ability to enforce her judgment.

### (B)

James and Beth Loshbough tender the additional authority of *Campbell v. A.H. Robins Co., Inc.*, 615 F.Supp. 496 (W.D. Wis.1985), in which Judge Gordon dismissed a RICO claim based on an alleged conspiracy to defraud the public into accepting the Dalkon Shield as a safe contraceptive device, and then to settle as many ensuing claims as possible for nuisance value, so as not to alert the public. The plaintiffs claimed to have suffered illnesses and injuries as a result of the Dalkon Shield. The court, again noting Justice Marshall's dissent in *Sedima*, held that the plaintiffs could bring no RICO action for personal injuries. The court further noted, "Precisely how the defendants, or anyone else, can conspire to cause negligent harm or conspire to cause damages under a strict product liability claim is inexplicable." 615 F.Supp. at 500. Again, however, it does not appear that the *Campbell* plaintiffs were judgment creditors.

### (C)

James and Beth Loshbough also argue that any injury caused by the racketeering alleged in the complaint was inflicted upon Federal Press, rather than upon Ms. Wooten. In *Warren v. Manufacturers Nat'l Bank of Detroit*, 759 F.2d 542 (6th Cir. 1985), the court considered a claim arising from a corporate bankruptcy allegedly caused by racketeering activities by the bank that made loans to the corporation. The plaintiff was the corporations's sole shareholder, chairman of the board, chief

executive officer and major creditor. The court held that the complaint stated no claim; the defendant's conduct did not directly cause the plaintiff's injury, which was "merely incidental to the corporation's injury". 759 F.2d at 545. The plaintiff's injury, in other words, was not "by reason of" the defendant's violation of § 1962. Accord, *Nordberg v. Lord, Day & Lord*, 107 F.R.D. 692 (S.D.N.Y.1985) (shareholders could not maintain suit for injury to corporation).

This argument does not, however, carry the day for these defendants. First, *Warren v. Manufacturers Nat'l Bank of Detroit, supra*, was decided April 12, 1985; five days later, the Supreme Court heard oral argument in *Sedima*. That the *Warren* holding survived *Sedima* is not clear; the *Sedima* Court, in rejecting an argument that the RICO plaintiff's injury must have been caused by a racketeering injury of the sort RICO was designed to deter, wrote:

> This less restrictive reading is amply supported by our prior cases and the general principles surrounding this statute. RICO is to be read broadly. This is the lesson not only of Congress' self-consciously expansive language and overall approach ... but also of its express admonition that RICO is to 'be liberally construed to effectuate its remedial purposes.' ... The statute's 'remedial' purposes are nowhere more evident than in the provision of a private action for those injured by racketeering activity.

105 S.Ct. at 3286. Accord, *Morgan v. Bank of Waukegan*, 804 F.2d 970, 973 (7th Cir., 1986) ("This Circuit has consistently held that RICO must be given the broad effect mandated by its plain language ... The sweep of RICO is admittedly broad, and our function is to apply the language of the statute as drafted by Congress, not to rewrite the statute as we might prefer it to be.").

More fundamentally, however, Ms. Wooten's injury is different in kind from the injury suffered by Federal Press "by reason of" the alleged racketeering. The de-

fendants stripped Federal Press of the ability to survive a judgment; they prevented Ms. Wooten from collecting her judgment. Her cause of action is individual, not derivative. *Crocker v. McMullan*, 623 F.Supp. 963, 966–67 n. 2 (S.D.Miss.1985) ("these cases do not preclude a shareholder with an individual claim from pursuing a RICO violation. These cases only hold that the plaintiffs failed to establish a personal, non-derivative cause of action."). See also *Graham v. Slaughter*, 624 F.Supp. 222 (N.D.Ill.1985) (counterclaimant could not seek recovery for injuries caused by embezzlement against corporation of which he was shareholder, but could bring RICO claim for embezzlement from partnership).

By the same token, however, one of the cases on which Ms. Wooten relies is easily distinguished by the same rationale. Ms. Wooten notes that in *Schact v. Brown*, 711 F.2d 1343 (7th Cir.1983), the court allowed a RICO action against officers and directors who had driven an insurance company to insolvency. That suit, however, was brought by the company's liquidator. *Schact* stands as authority for the ability of Federal Press' bankruptcy trustee to maintain this action, not as authority for Ms. Wooten.

### (D)

Ms. Wooten argues that she has standing under RICO: the injury of which she complains is to her ability to enforce her judgment, not to her person. Ms. Wooten relies upon *United States v. DePalma*, 461 F.Supp. 778, 785 (S.D.N.Y.1978), in which the court stated while denying a motion to dismiss an indictment, "Congress recognizes that '[i]n business, the mob bleeds a firm of assets, then takes bankruptcy' ... and sought to protect the public from such occurrences. It is this type of situation which is alleged in this case." Unfortunately, the *DePalma* opinion gives little further description of the facts alleged in the indictment there at issue; further, it did not address the right of a judgment creditor whose judgment arises from personal injury to seek civil redress under RICO.

Ms. Wooten notes that in *Bankers Trust Co. v. Rhoades*, 741 F.2d 511 (2d Cir.1984), *vacated* —— U.S. ——, 105 S.Ct. 3550, 87 L.Ed.2d 673 (1985), the Second Circuit held that defendants' scheme to defraud creditors through a fraudulent bankruptcy could form the basis of a claim under RICO. The court stated:

> The requirement that the injury be to the plaintiff's business or property means that the plaintiff must show a proprietary type of damage. For example, a person physically injured in a fire whose origin was arson is not given a right to recover for his personal injuries; damage to his business or his building is the type of injury for which § 1964(c) permits suit. Bankers has alleged that it has been deprived of various sums of money by the defendants' activities. There is no question that this constituted 'injur[y] in [its] business or property,' and that Bankers has thus adequately pleaded an injury of the type contemplated by § 1964(c).

741 at 515–16. Unfortunately, the Supreme Court vacated *Bankers Trust* for reconsideration in light of *Sedima*, and no subsequent opinion has been issued.

### (E)

The court rejects the Loshboughs' argument that a RICO claim must include an element of reasonable reliance by the plaintiff upon the defendant's solvency or representations. Most civil RICO cases present such an element because most such actions seem to be brought by the victims of predicate acts such as mail fraud or wire fraud. The statute, however, contains no requirement that the plaintiff's reliance be pleaded or proved, or that the civil RICO plaintiff be the victim of the predicate acts. In *Sedima*, the Court rejected arguments that the courts should restrict RICO's applicability by engrafting requirements not apparent from the statute, such as predicate convictions or "racketeering injuries". The lesson of *Sedima* seems to be that if

Congress unintentionally has created an overly broad and misused remedy, it is for Congress to repair the statute through amendment, rather than for the courts to inflate the elements required for recovery.

■ The court concludes that Ms. Wooten's complaint states a claim upon which relief can be granted. The complaint alleges that the defendants' conduct continued to the date of filing of the complaint; that allegation must be accepted as true for purposes of the dismissal motion. Accordingly, the court assumes, for these purposes, that the defendants continued their racketeering activity after Ms. Wooten had obtained her judgment. Ms. Wooten's judgment extinguished her personal injury claim; it provided her with a right that was assignable and devisable. The defendants' continuing racketeering activity, however, reduced the value of that right. These allegations state a claim under RICO's civil provisions.

The court need not now address whether a RICO claim would be made out by a showing of racketeering activity that ultimately affected Ms. Wooten's ability to enforce her judgment, but which all occurred before she obtained her judgment. In light of the complaint's allegations, that issue is not before the court.

### II.

Beth Loshbough asks that the court stay discovery as it relates to her. A bankruptcy court has enjoined Ms. Wooten from "proceeding with or continuing in any manner her action against Leonard E. Loshbough, Jr., James E. Loshbough, and David Gawthrop". Mrs. Loshbough notes that this order prevents her, as well as Ms. Wooten, from engaging in discovery as to those defendants; accordingly, she argues that she is unable to prepare a defense in this cause and should not be required to go forward. Mrs. Loshbough tenders her affidavit, stating that she has no knowledge of the events set forth in Ms. Wooten's complaint.

Mrs. Loshbough's argument assumes that she is entitled to conduct discovery before discovery may be had of her; Ms. Wooten disagrees. Ms. Wooten also contends that Mrs. Loshbough has personal knowledge of the facts. While Ms. Wooten offers no proof of that contention, it is difficult to see how she can garner such proof without discovery.

■ The court agrees with Ms. Wooten that this case need not lie wholly dormant during the pendency of bankruptcy proceedings involving some of the defendants. Mrs. Loshbough's motion for a stay should be denied.

### III.

Ms. Wooten filed a request for production by McGladrey of documents pertaining to Federal Press and the remaining defendants. Relying upon Indiana Code 25–2–1–23,[3] McGladrey objected to the request. James and Beth Loshbough later added their objections as McGladrey clients whose information would be disclosed. Ms. Wooten responds that Indiana's statutory accountant-client privilege does not apply to this federal question case.

A cogent argument might be made that because these communications made to accountants were privileged under Indiana law when made, were made in Indiana, *compare Armour Int'l Co. v. Worldwide Cosmetics, Inc.,* 689 F.2d 134 (7th Cir. 1982), and would remain privileged in a suit brought in an Indiana court, a federal court presiding over a case that includes state claims should uphold the privilege. Existing law forecloses this argument, however.

■ Rule 501 of the Federal Rules of Evidence provide that the law of privilege shall be governed by the principles of common law as they may be interpreted by the courts of the United States in the light of

---

**3.** A certified public accountant ... shall not be required to disclose or divulge information of which he may have become possessed, relative to and in connection with any professional service as a certified public accountant ... The information derived from or as the result of such professional practices shall be deemed confidential and privileged ...

reason and experience. The federal courts have held, nearly unanimously, that the accountant-client privilege is not within the principles of the common law. *United States v. Arthur Young & Co.,* 465 U.S. 805, 104 S.Ct. 1495, 79 L.Ed.2d 826 (1984); *Couch v. United States,* 409 U.S. 322, 93 S.Ct. 611, 34 L.Ed.2d 548 (1972); *Matter of International Horizons, Inc.,* 689 F.2d 996 (11th Cir.1982); *United States v. El Paso,* 682 F.2d 530 (5th Cir.1982); *Thompson v. General Nutrition Corp.,* 671 F.2d 100 (3rd Cir.1981); *United States v. Balistreri,* 403 F.2d 472 (7th Cir.1968); *Matter of Administrative Subpoenas v. Coopers & Lybrand,* 98 F.R.D. 414 (S.D.Fla.1982); 23 Wright & Graham, *Federal Practice and Procedure:* Evidence § 5427 (1980).

Ms. Wooten's motion to compel production should be granted, and McGladrey's motion for protective order should be denied.

### IV.

Based on the foregoing, the court now:

1. DENIES the motions to dismiss filed McGladrey and joined by James and Beth Loshbough and Mr. Gawthrop;

2. DENIES Beth Loshbough's motion for a stay of discovery as to her;

3. DENIES McGladrey's motion for protective order; and

4. GRANTS the plaintiff's motion to compel production of documents and orders McGladrey to produce the documents sought within ten days of the date of this order.

SO ORDERED.